```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Marcia L. George,                   :

      Plaintiff,                 :

    v.                              :    Case No. 2:07-cv-0357

Fairfield Metropolitan Housing
Authority, et al.,                  :    MAGISTRATE JUDGE KEMP

      Defendants.                :

<u>OPINION AND ORDER</u>

    Plaintiff Marcia L. George brought this action for damages resulting from the termination of her employment by defendants Fairfield Metropolitan Housing Authority, Fairfield County Metropolitan Housing Authority Board of Commissioners and Mary Bozman.  According to Ms. George, the defendants' actions violated her rights to procedural due process under the Fourteenth Amendment to the United States Constitution, violated Ohio's public policy against nepotism and breached her implied contract for continued employment.  Ms. George also contends that the defendants should be estopped from asserting that her employment was "at will" due to certain promises that the defendants allegedly made to her.  Ms. George prays for punitive damages, in addition to compensatory damages, against the defendants because their actions were allegedly undertaken in a spirit of malice, hatred, ill will or revenge, and in reckless disregard of her rights.

    Ms. George has moved for summary judgment on count one (due process), three (breach of contract) and four (promissory estoppel) of her complaint.  The defendants have moved for summary judgment on all of Ms. George's claims. This Opinion and

Order will resolve these cross-motions for summary judgment.

I.

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

Here, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears

the burden of establishing that no genuine issue of material fact exists and that he is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on his or its own Rule 56 motion does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party." Wiley v. United States, 20 F.3d 222, 224 (6th Cir.1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991) (citations omitted). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. Id. It is with these standards in mind that the instant motions must be decided.

                                II.

The following facts are uncontroverted for purposes of resolving the parties' cross-motions for summary judgment. Ms. George began her employment at FMHA on March 15, 2002, as a financial assistant. While employed as a financial assistant, she was under the direct supervision of Diane Smith, the accounting supervisor at FMHA. Sometime in 2004, Ms. Smith announced her intention to retire from FMHA after sixteen years. For approximately one year after her announcement, Ms. Smith trained Ms. George to take over as accounting supervisor.

In February of 2005, Mary Bozman, the executive director of FMHA, offered Ms. George the position of accounting supervisor.

Ms. George initially declined the promotion, but eventually accepted a subsequent written offer from Director Bozman on March 22, 2005.  Ms. George underwent a formal training period from April 8, 2005 to July 1, 2005, at which time her promotion to accounting supervisor became effective.  In her new position, Ms. George's direct supervisor was Lynn Williams.

On July 12, 2005, at a meeting also attended by Diane Smith and Lynn Williams, Director Bozman terminated Ms. George's employment without any discussion.  No advance notice was given to Ms. George nor was she provided at that time with an opportunity to address the reasons for her dismissal.  Earlier on that same day, Ms. George had questioned Thomas Cook, the brother of Director Bozman, concerning a purchase order he had signed for the Lancaster Community Housing Corporation, a non-profit company affiliated with FMHA.  An FMHA invoice was attached to the purchase order.  Ms. George did not believe that Mr. Cook was authorized to sign purchase orders on behalf of LCHC.  Although Diane Smith approved the purchase order, Ms. George later saw Director Bozman speaking with her brother.  This private conversation occurred prior to the meeting in which Ms. George's termination took place.

After her termination, Ms. George, her husband and her attorney attended an executive session of the FMHA Board of Commissioners to protest her firing.  Linda Sheridan, an FMHA board member, on behalf of herself and the other board members, subsequently conducted an investigation into the circumstances of Ms. George's termination.  Following this investigation, Ms. Sheridan prepared a memorandum dated October 26, 2005, which she and the other board members signed.  The memorandum said that Director Bozman acted properly in terminating Ms. George's employment and that no further action was warranted.  Ms. George did not attempt to appeal her termination to the State Personnel

Board of Review, but instead commenced this lawsuit.

Throughout her employment with FMHA, Ms. George was an unclassified employee under the Ohio civil service laws.  On April 25, 2005, she acknowledged in writing her receipt of the FMHA Manual and that she understood that this employee manual did not constitute an employment agreement or a guarantee of continued employment.  She further acknowledged in this document that the executive director, concurrent with the board of commissioners, could make changes to the manual at any time.  Ms. George also testified in her deposition that no one at FMHA ever promised her continued employment.

## III.

The Fourteenth Amendment proscribes governmental actions which deprive "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. §1.  Ms. George's assertion of a property interest requires a showing of more than a unilateral expectation of continued employment at FMHA; she must demonstrate a legitimate claim of entitlement to such employment. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Bishop v. Wood, 426 U.S. 341, 344 (1976).  This type of property interest does not derive from the United States Constitution, but rather from an independent source such as state law. Id.  A property interest in employment can be created by state statute, express contract, or implied contract. Singfield v. Akron Metropolitan Housing Auth., 389 F.3d 555, 565-66 (6th Cir. 2004)(citations omitted).  However, "a public employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause." Chilingirian v. Boris, 882 F.2d 200, 203 (6th Cir. 1989).

Under Ohio civil service rules, an unclassified employee is

hired at the discretion of the appointing authority and serves at the discretion of that authority. McClain v. NorthWest Community Corrections Center Judicial Corrections Bd., 440 F.3d 320, 330 (6th Cir. 2006)(citations omitted); Bracken v. Collica, 94 Fed. App'x 265, 267 (6th Cir. 2004)(citing Ohio Adm. Code §5119-7-11(C)(10)). As a consequence, unclassified employees may be dismissed from their employment with or without cause. Id. For this reason, courts have consistently held that unclassified civil servants in Ohio have no property interest in continued employment for due process purposes. See McClain, 440 F.3d at 330; Bracken, 94 Fed. App'x at 267; Vodila v. Clelland, 836 F.2d 231, 231-32 (6th Cir. 1987); Christophel v. Kukulinsky, 61 F.3d 479, 482 (6th Cir. 1995); Coats v. Cuyahoga Metropolitan Housing Auth., No. 78012, 2001 WL 370649 at *5 (Ohio App. 8 Dist. Apr. 12, 2001); Huggins v. City of Dayton, No. 3:03cv300, 2008 WL 728324 at *4 (S.D. Ohio Mar. 14, 2008).

 Ms. George concedes that she did not enjoy the statutory protections for continued employment afforded classified civil servants in Ohio. Nevertheless, she contends that certain provisions of the FMHA Manual created a property interest in her continued employment by allegedly providing her with the right to appear at a pre-separation conference with her chosen representative and respond to the evidence that she could not perform her job as accounting supervisor, as well as the right to be informed in advance of the date, time and location of the pre-separation conference along with the name, address and phone number of the person designated to conduct the conference.

 This contention is not novel. For instance, in Singfield, 389 F.3d at 565, the plaintiff argued that certain language in the Akron Metropolitan Housing Authority's employee handbook created a property right that was protected by the Fourteenth Amendment. The court of appeals, however, never addressed this

argument on the merits because it found that such a right existed by virtue of the agency's collective bargaining agreement. Id. The collective bargaining agreement provided that the housing authority would discharge its employees only for just cause. Id. at 566. Singfield, therefore, is of little or no benefit to Ms. George in this case in the absence of a collective bargaining agreement with FMHA containing a just cause provision.

     Ms. George also relies on Coats, supra, which, despite its holding that unclassified employees have no property interest in continued employment, went on to consider whether the Cuyahoga Metropolitan Housing Authority was nonetheless bound by the disciplinary procedure mandated by its policy manual.  Yet, "[federal] courts are in agreement that no property interest exists in a procedure itself, without more." United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir. 1992). For example, the police officer in Bishop v. Wood, supra, whose employment was terminable at will, did not have a property interest protected by the Fourteenth Amendment even though a city ordinance conditioned an employee's removal on compliance with certain specified procedures. Bishop, 426 U.S. at 345-47. Accordingly, even if the FMHA Manual conditioned Ms. George's discharge upon the defendants' compliance with certain specified procedures, she still lacked a property interest for due process purposes absent a mutually explicit understanding that she was entitled to keep her employment. See McClain, 440 F.3d at 330. Because the FMHA Manual expressly provided that employees, including Ms. George, could be dismissed with or without cause, such a mutually explicit understanding is clearly lacking in this case. See id. There is simply nothing in the FMHA Manual that Ms. George can point to which states, or even implies, that the defendants will discharge employees only for just cause.

     For the above reasons, the Court finds that Ms. George did

not have a protected property interest in continued employment at FMHA. Therefore, it is unnecessary to determine whether the procedures followed in connection with her termination would have satisfied due process had such a protected property interest been present. See Singfield, 389 F.3d at 565 (resolution of a due process claim requires a two-step analysis).

IV.

Ohio law has traditionally recognized that a general or indefinite hiring is terminable at the will of either party for any reason not contrary to law and that an action will not lie for damages resulting from an employer's discharge of an at-will employee without just cause. Collins v. Rizkana, 652 N.E.2d 653, 656 (Ohio 1995). This traditional rule, however, is not without exceptions. The employment-at-will doctrine can be modified by contract or promissory estoppel. Skalka v. Fernald Environmental Restoration Mgmt. Corp., 178 F.3d 414, 423 (6th Cir. 1999)(citing Mers v. Dispatch Printing Co., 483 N.E.2d 150, 153-55 (Ohio 1995)). Ms. George relies on these exceptions as the basis of her third and fourth causes of action. Although there is case law in this district to the effect that neither classified nor unclassified employees may utilize these quasi-contract theories to obtain relief, see Estabrook v. City of Dayton, No. C-3-96-71, 1997 WL 1764764 at *8 (S.D. Ohio Mar. 24, 1997), the Court will, nevertheless, proceed to examine each of Ms. George's claims.

The breach of contract claim is predicated on two separate provisions of the FMHA Manual. Section 8.01 provides for a predisciplinary conference in situations where an employee has been accused of a disciplinary infraction. Disciplinary infractions include the commission of a crime, immoral conduct or any behavior that could lead to suspension, demotion or discharge. The policy requires that written notice of the charges be given to the affected employee as soon as practicable

8

and no later than 24 hours prior to the conference.  The
conference is to be conducted by a detached individual and must
provide the employee with an opportunity to explain or rebut any
evidence presented in support of the allegation.  The policy
further provides for other procedural safeguards such as the
taking of testimony under oath and a record of the proceedings.
A form for the prescribed notice of predisciplinary conference is
found in Section 9.08. Section 9.09 is also located in the forms
section and is entitled "Notice of Pre-Separation Conference."
This form notice is similar to the one in Section 9.08, but
references a situation in which an employee is unable to perform
the essential functions of his or her job.

     Ms. George contends that these sections created a
contractual duty on the part of FMHA not to terminate her
employment without first affording her all of the procedural
safeguards contained therein and constituted an implied contract
of continued employment.  It is not clear that either of these
sections applied to Ms. George's situation. She was not accused
of a crime or immoral conduct or any other similar behavior, and
Section 3.12 of the FMHA Manual suggests that the notice of pre-
separation conference in Section 9.09 pertains only to disabled
employees who are subject to involuntary termination due to their
inability to perform the essential functions of their positions
despite reasonable accommodations.  While one of the reasons
given for Ms. George's termination was that she could not
adequately perform the duties of accounting supervisor, there is
no indication that her inability to do so resulted from a
disability.

     Assuming that one or the other of these sections did, in
fact, apply to Ms. George's situation, the Court does not believe
that such policy statements in an employee handbook are in and of
themselves sufficient to create an implied contract of continued

employment. See Skalka, 178 F.3d at 423-24 (citations omitted). An implied contract must contain each element necessary to the formation of an express contract, including definite and certain terms, mutual assent to those terms and a meeting of the minds. Facer v. City of Toledo, 702 N.E.2d 1267, 1271 n. 9 (Ohio Com. Pl. 1998).  Unless the parties manifest a mutual assent to be bound, "the handbook is simply a unilateral statement of rules and policies that creates no obligations or rights." Finsterwald-Maiden v. AAA South Central Ohio, 685 N.E.2d 786, 789 (Ohio Ct. App. 1996).  The fact that the FMHA Manual specifically disclaims any intent to create an employment contract and provides that the Executive Director can make changes to the manual at any time belies any such mutual assent. See id. at 789-90; see also Karnes v. Doctors Hosp., 555 N.E.2d 280, 282 (Ohio 1990)(per curiam). Even more important is the fact that Ms. George has not come forward with any evidence that FMHA misrepresented the nature of either of the positions she held when it hired and later promoted her. "Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook." Wing v. Anchor Media, Ltd. of Texas, 570 N.E.2d 1095, 1098 (Ohio 1991).

For her promissory estoppel claim, Ms. George relies on the same provisions in the FMHA Manual that she relies upon for her breach of contract claim.  Ms. George states in her supporting memorandum that "[e]ven if the language of the policy manual in this case does not rise to the level of a contract, it nevertheless constitutes a promise or representation on which [she] reasonably relied."  Plaintiff's Motion for Summary Judgment as to Counts One, Three and Four p. 17.

The principles of promissory estoppel may be applicable to an employment-at-will relationship where "a promise which the

10

employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." Mers, 483 N.E.2d at 155.  To prevail on a claim of promissory estoppel, the employee must establish that he or she relied upon a specific, discrete promise. Wing, 570 N.E.2d at 1098.  In an otherwise at will employment relationship,"only a specific promise of job security...can give rise to estoppel." Skalka,178 F.3d at 424 (citations omitted).

The FMHA Manual, with its unambiguous disclaimers, cannot satisfy the requirements of promissory estoppel.  Because no one at FMHA ever gave Ms. George a specific promise of  continued employment, the predisciplinary and pre-separation procedures outlined in the FMHA Manual could not reasonably have provided any assurance to her that she would not be terminated absent the defendants' compliance with such procedures.

V.

Ms. George also asserts that her termination violated Ohio's clear public policy against nepotism as embodied in Ohio Rev. Code §§2921.42, 102.03, and 3735.29.  According to her, this same policy is similarly reflected in the FMHA Manual and Section 19 of FMHA's annual contract with the Department of Housing and Urban Development.  She maintains that Director Bozman fired her because she raised concerns about nepotism in the office, specifically that Thomas Cook was signing purchase orders without proper authorization.

In Greeley v. Miami Valley Maintence Contractor, Inc., 551 N.E.2d 981 (Ohio 1990), the Supreme Court of Ohio recognized a public policy exception to the employment-at-will doctrine. In order to bring an action under Greeley, a plaintiff must be an employee at will.  Haynes v. Zoological Soc. Of Cincinnati, 652 N.E.2d 948, 951 (Ohio 1995).  Although Greeley limited its

11

holding to employees discharged in violation of a statute, the Ohio Supreme Court later expanded this cause of action to encompass discharges in violation of the federal and state constitutions, administrative rules and regulations, and the common law so long as "the public policy alleged to have been violated is of equally serious import as the violation of a statute." Painter v. Graley, 639 N.E.2d 51, 56 (Ohio 1994). To prevail on a Greeley claim, a plaintiff must show:

1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

Id.(quoting Henry H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?, 58 U.Cin.L.Rev. 397, 398-99 (1989)). The clarity and jeopardy elements are questions of law to be determined by the Court, while the causation and overriding justification factors are for the trier of fact. Collins, 652 N.E.2d at 658.

In their motion for summary judgment, the defendants contend that Ms. George cannot satisfy the clarity element of her Greeley claim because there is no clear public policy, in their view, that is exhibited by state law. They deny that the FMHA Manual and the annual contract between FMHA and HUD may serve as sources for a public policy claim and point out that the Ohio statutes cited by Ms. George stand merely for the proposition that public

12

officials and employees of a metropolitan housing authority are forbidden from having an unlawful interest in a contract with their agencies.  The defendants argue that there are no Ohio cases establishing a violation of public policy based on any of these statutes and that, therefore, a public policy claim arising from such laws would be a case of first impression.  The defendants further maintain that the clarity element requires the statutory basis of the public policy to be uniform and have state-wide application.  Because these nepotism laws concern only public employees, and are inapplicable to at-will employees in the private sector, the defendants argue that these statutes do not have state-wide application.

 The Court is not necessarily persuaded by these arguments. Regardless of whether the FMHA Manual and the HUD contract are proper sources of public policy, the Ohio statutes plainly are. Although there may be no reported cases involving a Greeley claim under the factual scenario of this case, Ohio courts have derived a clear public policy from one or more of the statutes cited by Ms. George. See Walsh v. Bollas, 612 N.E.2d 1252, 1256 (Ohio Ct. App. 1992)(where hiring of corrections officer was in violation of Ohio Rev. Code §2921.42, statutory rights of a classified employee could not arise from such illegal contract); Carroll Mercury Sales, Inc. v. Nye, No. 76AP-1016, 1977 WL 200111 at *2 (Ohio App. 10 Dist. Apr. 21, 1977)(courts will not enforce contracts illegal under §2921.42(A)).  The Court likewise is unconvinced that because these statutes apply only to public officials and employees that they are not of "statewide application."  However, in light of the Court's disposition of this claim under the jeopardy element, the Court need not resolve definitively whether Ms. George's claims satisfies the clarity element.

 The defendants also contend that Ms. George's Greeley claim

13

fails as a matter of law because she never took any action to further the public policy against nepotism or reported the violation of the anti-nepotism policies to anyone. Therefore, they claim that neither FMHA or Director Bozman could have taken any retaliatory action against her from which a public policy claim might have arisen. If the public policy Ms. George is espousing were the same as that embodied in the Ohio Whistleblower Act, Ohio Rev. Code §4113.52, the defendants would be correct. Ohio courts have found a clear intent on the part of the legislature to encourage whistleblowing only to the extent that the employee complies with the reporting requirements of the statute. See <u>Kulch v. Structural Fibers, Inc.</u>, 677 N.E.2d 308, 322-23 (Ohio 1997). Accordingly, an employee who does not comply with the procedures set forth in §4113.52 may not pursue a <u>Greeley</u> claim based upon the whistleblowing policy. <u>Contreras v.Ferro Corp.</u>, 652 N.E.2d 940, 946 (Ohio 1995). Where an employee relies instead upon a public policy independent of the Whistleblower Act, that employee will not be bound by the requirements or limitations of that statute even if the public policy claim could be cast as a whistleblower protection policy. <u>Avery v. Joint Tp. Dist. Memorial Hosp.</u>, No. 07-3801, 2008 WL 2596211 at *7 (6th Cir. Jul. 1, 2008)(citing <u>Pytlinski v. Brocar Products, Inc.</u>, 760 N.E.2d 385, 388 (Ohio 2002) and <u>Krickler v. City of Brooklyn</u>, 776 N.E.2d 119, 124 (Ohio Ct. App. 2002)). Because Ms. George is not relying upon the whistleblower protection policy for her <u>Greeley</u> claim, her failure to take action to further the anti-nepotism policy or to report the violation of such policy prior to her termination is irrelevant to whether a clear public policy against nepotism exists.

The parties also dispute whether Ms. George can satisfy the jeopardy element of her public policy claim. Although state courts in Ohio have yet to clarify what a plaintiff must do to

prove that his or her discharge places a public policy in jeopardy, the United States Court of Appeals for the Sixth Circuit has adopted the tripartite analysis from Perrit, supra at 408. See Avery, 2008 WL 2596211 at *8. Under this test, a court must:

> (1) determine what kind of conduct is necessary to further the public interest at issue; (2) decide whether the employee's actual conduct fell within the scope of conduct protected by the policy; and (3) consider whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal.

Id. (quoting Himmel v. Ford Motor Co., 342 F.3d 593, 599 (6th Cir. 2003)(internal citation and quotation marks omitted). In Jerner v. Siemens Energy & Automation, Inc., 395 F.3d 655 (6th Cir. 2005), the court explained that the employee's conduct "must at least have made clear to his employer that he is invoking a governmental policy as the basis of his complaint, not just his own self-interest." Id. at 659. This holding has been criticized by the Montgomery County Court of Appeals, see Dohme v. Eurand America, Inc., 868 N.E.2d 701 (Ohio Ct. App.), appeal allowed, 868 N.E.2d 679 (Ohio 2007), but was recently reaffirmed by the Sixth Circuit. See Avery, 2008 WL 2596211 at *9.

    When Ms. George confronted Thomas Cook about his signing the purchase order, she did not invoke the anti-nepotism policy as the basis of her complaint. She merely questioned his authority to sign such purchase orders. Had Mr. Cook been so authorized, there is no reason to believe she would have questioned the purchase order on the basis that he was Director Bozman's brother. More importantly, given her stated objection, there was no reason for FMHA or Director Bozman even to assume that furtherance of the anti-nepotism policy was the actual basis of her complaint. The fact that Director Bozman had expressed her wish several weeks earlier that the Inspector General not have to

15

know that Mr. Cook was her brother would be relevant only if Ms. George had been terminated for sharing that information with the Inspector General, which she was not.

The Court concludes that Ms. George cannot satisfy the jeopardy element of her public policy claim. Accordingly, her <u>Greeley</u> claim fails as a matter of law.  It is, therefore, unnecessary to consider defendants' additional argument that Ms. George's sole exclusive remedy for a public policy tort lies in an appeal of her termination to the State Personnel Board of Review.

VI.

Ms. George's fifth and final cause of action consists of a claim for punitive damages.  This claim is dependent upon the success of one or more of her other causes of action.  In light of this Court's disposition of the other claims in the defendants' favor, neither compensatory nor punitive damages are recoverable.

VII.

Based on the foregoing reasons, the Court determines that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Accordingly, the defendants' motion for summary judgment (#14) is granted and the plaintiff's motion for partial summary judgment (#17) is denied.  This case is dismissed with prejudice.  The Clerk shall enter final judgment in favor of the defendants.

/s/ Terence P. Kemp
United States Magistrate Judge